NATURAL RESOURCES DEFENSE
COUNCIL, et al., Plaintiffs,

v.

Federico PENA, et al., Defendants.

Civ.A. No. 97–0936(SS).

United States District Court,
District of Columbia.

Aug. 19, 1998.

Lisa G. Dowden, Robert L. Roach, Spiegel & McDiarmid, Washington, DC, Barbara A. Finamore, Andrew Patrick Caputo, David E. Adelman, Natural Resources Defense Coun-

cil, Washington, DC, Eric Robert Glitzenstein, Howard Mesnikoff Crystal, Meyer & Glitzenstein, Washington, DC, for plaintiff Natural Resources Defense Council, Inc.

Lisa G. Dowden, Robert L. Roach, Spiegel & McDiarmid, Washington, DC, Barbara A. Finamore, Andrew Patrick Caputo, David E. Adelman, Natural Resources Defense Council, Washington, DC, for plaintiffs except Natural Resources Defense Council, Inc., and Concerned Citizens for Nuclear Safety.

Lisa G. Dowden, Robert L. Roach, Spiegel & McDiarmid, Washington, DC, Steven Michael Pavsner, Joseph, Greenwald & Laake, P.A., Greenbelt, MD, for plaintiff Concerned Citizens for Nuclear Safety.

Martin James LaLonde, Anthony P. Hoang, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This matter comes before the Court on Parties' Cross–Motions for Partial Summary Judgment. In Count II of the Complaint, Plaintiffs [1] allege that the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*, requires the Department of Energy ("DOE" or "Department") to complete a Supplemental Programmatic Environmental Impact Statement ("Supplemental PEIS") for its Stockpile Stewardship and Management Program ("SSM" or "Stockpile Program")—a program designed to ensure the safety and reliability of the nation's aging nuclear weapons. As part of the nuclear stockpile program, the Department proposed to re-establish plutonium pit production at the Los Alamos National Laboratory in New Mexico and to initiate the construction and operation of the National Ignition Facility ("NIF") at the Lawrence Livermore National Laboratory in California. Pursuant to NEPA and the regulations promulgated thereunder by the Council of Environmental Quality ("CEQ"), the Department performed a programmatic environmental review of the

proposed Stockpile Program in 1996. Plaintiffs assert that since then, new information has come to light concerning the potential environmental hazards at Los Alamos and Livermore facilities. Given the new information, Plaintiffs contend that NEPA requires the Department to prepare a Supplemental PEIS to consider the changed circumstances and re-evaluate the two facilities' impact on the environment. Defendants assert that they have met their obligations under the law and that a Supplemental PEIS is not needed at this time. For the reasons set forth below, this Court concurs with the Government and accordingly denies Plaintiffs' Motion for Summary Judgment. With certain modifications to the Defendants' proposed order, the Court grants Defendants' Motion for Partial Summary Judgment and dismisses Plaintiffs' case without prejudice at this time.

## I. FACTUAL BACKGROUND

### A. The Stockpile Program and Environmental Impact Statement.

The Department of Energy is entrusted with safekeeping the nation's stockpile of aging nuclear weapons. After the Comprehensive Test Ban Treaty, the President and Congress directed the Department to develop a program for maintaining the safety and reliability of the country's nuclear stockpile without the use of underground nuclear testing and without the introduction of new nuclear weapons. In 1995–96, the Department responded to the mandate by creating the Stockpile Stewardship and Management Program, intended to oversee the production, maintenance, inspection, and dismantling of the nation's nuclear weapons stockpiles.

As envisioned by DOE, the Stockpile Program consists of two main components: (1) stockpile stewardship and (2) stockpile management. Stockpile stewardship involves the research, design, development, and testing of nuclear weapons along with the assessment and certification of their safety and reliability. These activities are conducted by the

---

**1.** More than 30 public interest organizations concerned about environmental waste and nuclear proliferation are the Plaintiffs in this suit.

Department at their various weapons laboratories—including the Los Alamos National Laboratory in New Mexico and the Lawrence Livermore National Laboratory in California. Traditionally, DOE accomplished the task of stockpile stewardship through underground nuclear testing and the production of new-design nuclear weapons. With the Test Ban Treaty halting these activities, DOE determined that the existing basic capabilities of the weapons laboratories alone were insufficient to make up for the loss of nuclear testing. The Department felt the need for improved simulation and experimental capabilities in order to meet its mandate. Accordingly, as part of the SSM Program, the Department proposed the construction of the National Ignition Facility. The new facility would house an advanced laser capable of simulating fusion to study the effects of a nuclear explosion, and thus serve as a substitute for real testing. After considering four other sites, the Department chose to build the facility at the Lawrence Livermore National Laboratory in California.

The second component of the SSM Program, stockpile management, involves the actual maintenance, refurbishment, surveillance, and dismantling of the country's remaining nuclear weapons. While the Test Ban Treaty ceased the development and manufacture of new-design weapons, DOE determined that it could not eliminate all of the manufacturing capabilities of its industrial base. The old weapons in stock would still need repair and replacement parts in order to function and serve as an effective deterrent. Specifically, the Department determined that production of plutonium pits— the explosive core of a nuclear weapon— needed to be reinstated as part of the SSM Program. Traditionally, plutonium pits were manufactured at the Rocky Flats Plant near Denver, Colorado, but in 1992 it ceased production after a series of plutonium fires and in response to the change in national security policy. After considering alternative sites, the Department determined that production would be shifted to the Los Alamos National Laboratory and included the plans for production in the SSM Program.

Before implementing SSM, the Department prepared a comprehensive environmental review of the program as required by NEPA. Under NEPA, if an agency recommends legislation or other federal action that significantly could affect the quality of the human environment, it must prepare an Environmental Impact Statement ("EIS") that evaluates all other reasonable alternatives. *See* NEPA § 4332(2)(C)(ii). The Department proposed to conduct its environmental review in two phases: First, a programmatic review to assist in the decision of choosing suitable facilities; and second, a site-specific review under the assumption that the Department intended to implement its programmatic decisions.

On June 4, 1995, the Department issued a Notice of Intent to prepare the Programmatic Environmental Impact Statement ("PEIS"). Over the next two months, the Department had numerous public meetings and reviewed over 13,000 public comments. In February 1996, DOE released its draft PEIS. The draft noted that the purpose of the SSM Program was to maintain the safety and reliability of U.S. nuclear weapons and to maintain core U.S. technical and other competencies in nuclear weapons. To further this purpose, the program called for: (1) enhanced experimental capability; (2) adjustment of the industrial base; and (3) re-establishment of the manufacturing capability and capacity for pit components.

After a two month comment period, the Department released its Final PEIS and published it in the Federal Register. *See* 61 Fed.Reg. 58548 (November 15, 1996). On December 19, 1996, the Secretary of Energy signed the Record of Decision ("ROD") for the SSM Program. The ROD represented the final decision of the agency.

## B. Procedural History

On May 2, 1997, Plaintiffs filed a Motion for Preliminary Injunction in this case seeking to enjoin construction of the new SSM facilities, as well as major upgrades to mission capability. In their Motion, Plaintiffs alleged that the Department had failed to perform an adequate programmatic environmental review of the SSM Program as required by NEPA because it: (1) failed to

address DOE's entire proposed SSM Program Plan in the SSM PEIS; and (2) failed rigorously to explore and objectively evaluate reasonable alternatives to its proposed SSM Program Plan. On August 8, 1997, this Court denied Plaintiffs' motion on the grounds that: (1) Plaintiffs did not appear likely to succeed on the merits; and (2) national security interests associated with implementing the SSM Program outweighed Plaintiffs' immediate environmental concerns.

### C. Present Litigation

In January 1998, Plaintiffs filed a Motion for Leave to Amend their Complaint.[2] Since the publication of the SSM PEIS in September 1996, Plaintiffs allege that new information has come to light that presents a seriously different picture of the environmental and safety risks of plutonium pit production at Los Alamos and the National Ignition Facility at Livermore. Plaintiffs contend that the new information is significant enough to call into question the basic assumptions and conclusions of the 1996 PEIS. Specifically, Plaintiffs allege that the new information concerns: (1) recent scientific studies and independent review by the Defense Nuclear Facilities Safety Board revealing serious seismic and safety risks affecting key pit production facilities at Los Alamos— Information that has already caused the agency to put its pit production operation on hold; (2) the agency's recent decision to use weapons grade plutonium (239) in the same building at Los Alamos where they use plutonium 238, thereby increasing the likelihood of plutonium fires as occurred at Rocky Flats; (3) a new congressionally mandated plan requiring the agency to design, construct, and partially operate a much larger scale pit production facility at multiple sites; and (4) new proposals to conduct a wide range of experiments at the National Ignition Facility using hazardous and radioactive materials. Plaintiffs contend that none of these matters was contemplated in the original PEIS. Count II of the new Complaint alleges that a Supple-

mental PEIS must be conducted on the environmental effects of the four new matters before the Department can take any further action.

In response to Plaintiffs' new Complaint, Defendants analyzed the new information and responded by preparing two Supplement Analyses pursuant to NEPA regulation 10 C.F.R. § 1021.314(c): one for the pit production facilities at the Los Alamos site and the other for the National Ignition Facility at Livermore. "When it is unclear whether or not an EIS supplement is required," Department regulations mandate that the agency prepare a Supplement Analysis addressing the decision of whether or not to conduct a Supplemental PEIS. 10 C.F.R. § 1021.314.[3] Based upon its two Supplement Analyses, the agency determined that Plaintiffs' allegations did not warrant the preparation of a Supplemental PEIS.

After cross-filing for summary judgment, the parties engaged in extensive settlement discussions. Although the parties were able to reach an agreement with regard to some of the issues in dispute, namely the alleged plans to increase pit production at multiple sites, they were ultimately unsuccessful in resolving all of these issues. Despite the lack of agreement, the Defendants retracted from the position they took in their Motion for Summary Judgment, where they claimed to have made a final decision concluding that a Supplemental PEIS was not needed notwithstanding Plaintiffs' "new information." For the limited purpose of resolving the pending cross-motions for summary judgment on Count II of the Complaint, the Department agreed to prepare a Supplement Analysis on the implementation of plutonium pit production at Los Alamos. If certain conditions were met by the analysis, the Department agreed to prepare a Supplemental PEIS as requested by Plaintiffs. In addition, with regard to the National Ignition Facility, the Defendants represented to this Court that the Department has no expecta-

---

**2.** The Court granted Plaintiffs' motion and they amended the Complaint to withdraw 11 of the 13 claims in Count II concerning the SSM Program.

**3.** The regulation imposes certain criteria for a Supplement Analysis, including the requirement

that the document "contain sufficient information for DOE to determine whether [a]n existing EIS should be supplemented." 10 C.F.R. § 1021.314(c).

tion of conducting experiments using highly toxic and explosive materials at any time before the year 2007. The Department committed either to make a determination not to conduct such experiments by the year 2004, or to begin preparation of a Supplemental PEIS regarding such experiments as sought by Plaintiffs.

In response to Defendants' proposal to resolve the litigation, Plaintiffs contend that the agency already made its final determination with regard to issuing a Supplemental PEIS when it published its first two Supplement Analyzes. They allege that the retraction is little more than a delaying tactic and that upon conducting the additional analysis, the agency will inevitably conclude once again that a Supplemental PEIS is not necessary. This Court finds that Defendants' proposal was made in good faith. Upon consideration of the Defendants' position, this Court finds that none of the issues raised by Plaintiffs is now ripe for review. If, at any time, the Department were to fail to follow through on its promises or if it was found that the Department in any way misrepresented its position to this Court, Plaintiffs have the right to return to this Court for it to take appropriate action. Accordingly, the Court will deny Plaintiffs' Motion for Partial Summary Judgment at this time and enter an appropriate Order embodying Defendants' representations made in their papers and in open Court. For the reasons stated above, it is hereby **ORDERED** as follows:

### I. PLUTONIUM PIT FABRICATION

1. By December 31, 1998, as agreed to by both parties, the United States Department of Energy ("DOE") shall complete, have peer-reviewed, and publish results of the *Strategic Survey for Technical Area (TA)–55, FY97 Pajarito Trench Study,* the *Core Holes (Facility Specific) Study,* and the *Probabilistic Surface Rupture Assessment for Technical Area (TA)–3,* and by March 31, 1999, DOE shall complete, have peer-reviewed, and publish the results of the *Strategic Survey for TA–3* and *FY98 Pajarito Trench Study.*

2. As agreed to by the Department, upon completion of the seismic studies identified in Paragraph 1 above, DOE shall issue a Supplement Analysis to the Programmatic Environmental Impact Statement ("PEIS") for the Stockpile Stewardship and Management ("SSM") Program, in accordance with DOE NEPA regulation 10 C.F.R. § 1021.314. This Supplement Analysis shall contain a technical analysis of whether the information presented in the seismic studies identified in Paragraph 1 is "significant," as provided by CEQ NEPA regulation 40 C.F.R. § 1502.9(c)(1), and DOE NEPA regulation 10 C.F.R. § 1021.314. DOE shall issue this Supplement Analysis, and Plaintiffs' right with respect to the legal adequacy of this Supplement Analysis shall be prepared, in accordance with the provisions of Paragraph 4 below.

3. In addition, the Supplement Analysis shall contain a technical analysis and full factual report setting forth the projected extent to which a building-wide fire at TA–55 of the Los Alamos National Laboratory would result in the release of plutonium (Pu)–238 and plutonium (Pu)–239 (weapons-grade plutonium). In this technical analysis, DOE shall re-examine its previous determinations regarding the plausibility of a building-wide fire at TA–55 under the following hypothetical circumstances: (1) the propagation of a "glove-box" fire [4] to a building-wide fire; (2) a building-wide fire resulting from a severe site-wide earthquake; and (3) sabotage. DOE shall issue this Supplement Analysis, and Plaintiffs' rights with respect to the legal adequacy of this Supplement Analysis shall be preserved, in accordance with the provisions of Paragraph 4 below.

4. DOE shall issue the Supplement Analysis described in Paragraphs 2 and 3 above, in draft form. It shall provide for a 30–day public comment period. At the close of the public comment period, DOE shall determine, based on the Supplement Analysis described in Paragraphs 2 and 3 and the public comments thereon, whether there is a need to prepare a Supplemental SSM PEIS on the issues identified in Paragraphs 2 and 3. In the event that DOE makes the determination that a Supplemental PEIS on the issues

---

**4.** A "glove-box" fire is one that is only within one     part of the building.

identified in Paragraphs 2 and 3 is needed, DOE shall prepare that Supplemental SSM PEIS in accordance with DOE NEPA regulation 10 C.F.R. § 1021.314. In the event that DOE makes a determination that a Supplemental PEIS on the issues identified in this paragraph is not needed, Plaintiffs may seek review by this Court of the legal adequacy of that determination, in accordance with Paragraph 7 below.

5. Prior to taking any action that would commit DOE resources to detailed engineering design, testing, procurement, or installment of pit production capability for a capacity in excess of the level that has been analyzed in the SSM PEIS (the capacity analyzed in the SSM PEIS is the fabrication at LANL of 50 pits per year under routine conditions, and 80 pits per year under multiple shift operations), DOE shall prepare and circulate a Supplemental PEIS, in accordance with DOE NEPA regulation 10 C.F.R. § 1021.314, analyzing the reasonably foreseeable environmental impacts of and alternatives to operating such an enhanced capacity, and issue a Record of Decision based thereon.

## II. THE NATIONAL IGNITION FACILITY

6. No later than January 1, 2004, DOE shall (1) determine whether any or all experiments using plutonium, other fissile materials, fissionable materials other than depleted uranium (as discussed in the *Supplement Analysis for the Use of Hazardous Materials in NIF experiments*, A.R. doc. VII.A–12), lithium hydride, or a Neutron Multiplying Assembly (NEUMA), such as that described in the document entitled *Nuclear Weapons Effects Test Facilitization of the National Ignition Facility* (A.R. doc VII.A–4) shall be conducted in the NIf; or (2) prepare a Supplemental SSM PEIS, in accordance with DOE NEPA regulation 10 C.F.R. § 1021.314, analyzing the reasonably foreseeable environmental impact of such experiments. If DOE undertakes the action described in subpart (2) of this paragraph, DOE shall complete and issue the Supplemental SSM PEIS and the Record of Decision based thereon within eighteen (18) months after issuing a notice of intent to prepare the Supplemental SSM PEIS.

## III. GENERAL PROVISIONS

7. The Court may hold a hearing upon the request of any party to review DOE's progress in complying with the provisions of this Order or to provide relief from the requirements of this Order in the event of presently unforeseen circumstances. If time permits, fifteen (15) days prior to making a request for a hearing, a party shall provide written notification to the counsel of record for the other party of its intent and basis for making such a request. Plaintiffs shall provide written notification to the DOE Assistant Secretary for Defense Programs and the DOE General Counsel.

8. In the event the President's Council on Environmental Quality issues an exemption to DOE pursuant to 40 C.F.R. § 1506.11 on national security emergency grounds for any of the actions identified in this Order, DOE may begin the implementation of such exempted actions before completing the NEPA document required by this Order. Plaintiffs may seek review by this Court of DOE's action(s) under this paragraph. DOE shall inform the Court and Plaintiffs when it begins the implementation of the exempted actions.

9. Count II of Plaintiffs' Second Amended Complaint is hereby dismissed without prejudice except that this Court shall retain jurisdiction to enforce this decree and take such other action as may be appropriate.